UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **KRYSTAL NABORS** | * | **CIVIL ACTION NO.: 11-01869** |
| **PLAINTIFF** | * | |
| | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| | * | **Judge Rebecca F. Doherty** |
| **HCA d/b/a HOUSTON SHARED** | * | |
| **SERVICES, SHELLY LEE** | * | |
| **KATHLEEN O'SULLIVAN, JAMES** | * | |
| **MILLER, and HARRIET PALOMBO** | * | **Magistrate Judge C. Michael Hill** |
| **DEFENDANTS** | * | |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

---

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Krystal Nabors, who opposes the defendant's Motion to Dismiss and Compel Arbitration for the following reasons.

**FACTS**

Krystal Nabors (hereinafter referred to as "Nabors") was an employee of HSS/HCA when her employment was terminated under the pretext that she could not perform her assigned job. Nabors had been promoted to several positions within the company and had never been reprimanded. That changed after several black employees (all of whom were Nabors immediate subordinates) filed an anonymous ethics complaint against white management, Nabors began to be reprimanded and was scorned by Harriet Polombo, white female manager, that Nabors caused the black females to file the complaint against white management. Thereafter, Nabors and most

of the black female complainants were either terminated or demoted and were subjected to disparate treatment, harassment and retaliation.

The HSS Handbook[1] on page 1 and respectively on page 61, read as follows:

Page 1 reads in pertinent part:

> "BUT NEITHER THIS HANDBOOK NOR ANY PROVISION OF THIS HANDBOOK IS AN EMPLOYMENT CONTRACT OR ANY OTHER TYPE OF CONTRACT,"

Page 61, reads in pertinent part:

> "I HAVE READ AND UNDERSTAND THE ABOVE STATEMENT AND AGREE TO READ THE EMPLOYEE HANDBOOK, WHICH I HEREBY ACKNOWLEDGE HAVING RECEIVED.  I UNDERSTAND THAT NEITHER THIS HANDBOOK NOR ANY PROVISION OF THIS HANDBOOK IS AN EMPLOYMENT CONTRACT OR ANY OTHER TYPE OF CONTRACT."

Additionally, Page 61, reads in pertinent part:

> "The facility reserves the right to rescind, modify or deviate from these or other guidelines, policies, practices or procedures relating to employment matters from time to time as it considers necessary in its sole discretion, either in individual of Facility-wide situations with or without notice."

Alas, there exists no binding arbitration agreement contract between the parties.  For argument sake, even if there was a contract, be it verbal or written, the arbitration clause is illusory.

## OPPOSITION TO MOTION TO COMPEL ARBITRATION

Louisiana state courts recognize that contract law does not require written acceptance of an arbitration agreement. In <u>Hurley v. Fox</u>, 520 So.2d 467, 467 (La. Ct. App. 4 Cir. 2/10/88), the

---

[1] See Defendant's Exhibit  A-3, page 1; page 61

Louisiana Court of Appeal held that the Louisiana state arbitration law—which tracks the language of the FAA and, like the FAA, requires arbitration agreements to be in writing. <u>Cook v. AAA Worldwide Travel Agency,</u> 352 So.2d 243 (La. Ct.App. 4 Cir. 9/8/77), rev'd on other ground<u>s, 360 So.2d 839 (La.1978)</u>). There was no written arbitration agreement presented to Nabors.

The "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." <u>Fleetwood Enterprises Inc.,</u> 280 F.3d at 1073. That determination "is generally made on the basis of `ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting <u>First Options of Chicago Inc. v. Kaplan</u>, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)).

This Court has explained that "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts. Therefore, `generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . .'" <u>Iberia Credit Bureau, Inc. v. Cingular Wireless</u> LLC, 379 F.3d 159, 166 (5th Cir. 2004); <u>Andry v. New Orleans Saints,</u> 820 so. 2d 602, 603-04 (La. App. 5 Cir. 2002).

Though Nabors Claims neither that any section of the employment agreement was enacted as a result of fraud or duress, nor employment contract is unconscionable, she claims that the arbitration clause is unenforceable.

Courts have found other instances when a contract provision may be found invalid or unenforceable. Ambiguous contracts must fail and are not subject to arbitration. <u>Baudoin v. Mid-Louisiana Anesthesia Consultants</u>, Inc., 5TH CIR. R. 47.5.4.

In <u>J.M. Davidson Inc. v. Webster,</u> 128 S.W.3d 223 (Tex.2003), an at-will employee, Webster, was injured on the job, filed a worker's compensation claim, then was terminated. He then sued his employer, Davidson, claiming retaliation for his filing the worker's compensation claim. Davidson claimed it was entitled to arbitrate pursuant to a written agreement Webster signed when he was hired by Davidson. The first paragraph of the agreement dealt with arbitration; the second (and longer) paragraph largely dealt with a number of other employment related matters and stated in its next to last sentence that "The `Company' reserves the right to unilaterally abolish or modify any personnel policy without prior notice." The Supreme Court held that the contract was ambiguous with respect to whether the above quoted sentence of the second paragraph applied to the arbitration agreement contained in the first paragraph, and thus remanded the case to the trial court to resolve that ambiguity. The court plainly held that *if* the defendant-employer retained the right to "unilaterally abolish or modify" the arbitration program, *then* the agreement to arbitrate was illusory and not binding on the plaintiff-employee.

Other Texas authorities are in accord. <u>In Re C&H News Co</u>*.,* 133 S.W.3d 642 (Tex.App.—Corpus Christi 2003, no writ), involved an employee's one page agreement stating he and the employer have "agreed to submit all claims or disputes between us to binding arbitration as provided in the Handbook." The handbook, a separate document, provided that the employer reserved the unilateral right to amend it. The court concluded that arbitration agreement was "illusory" and "unenforceable" because the handbook allowed the employer to amend its terms and thus "to unilaterally amend the types of claims subject to arbitration." *"*<u>Dumais v. Am. Golf Corp., 299 F.3d 1216, 1219 (10th Cir.2002)</u> ('We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory.'); <u>Floss v. Ryan's Family Steak Houses,</u>

Inc., 211 F.3d 306, 315-16 (6th Cir.2000) (arbitration agreement was `fatally indefinite' and illusory because employer `reserved the right to alter applicable rules and procedures without any obligation to notify, much less receive consent from,' other parties) ... Snow v. BE & K Constr. Co., 126 F.Supp.2d 5, 14-15 (D.Maine 2001) (citations omitted) (arbitration agreement illusory because employer `reserve[d] the right to modify or discontinue [the arbitration] program at any time'; `Defendant, who crafted the language of the booklet, was trying to "have its cake and eat it too." Defendant wished to bind its employees to the terms of the booklet, while carving out an escape route that would enable the company to avoid the terms of the booklet if it later realized the booklet's terms no longer served its interests.'); Trumbull v. Century Mktg. Corp., 12 F.Supp.2d 683, 686 (N.D.Ohio 1998) (no binding arbitration agreement because `the plaintiff would be bound by all the terms of the handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced.')...." *Id.*

When determining whether a dispute is subject to arbitration, a court must engage in a two-step process. First, it must determine whether a valid agreement to arbitrate exists between the parties. Fleetwood Enters. Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002). If so, it must then determine whether the dispute at hand fits within the parameters of the arbitration agreement. Fleetwood Enters. Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002).

## **OPPOSITION TO DISMISSAL**

Because there is no enforceable binding arbitration agreement between the parties, the State suit that was removed by the defense to federal court should not be dismissed. Nabors, who was not represented by counsel, was not allowed to participate in the selection of the

arbitrator. The defense solely selected the arbitrator. The arbitrator admits on the record that he is unfamiliar with Louisiana whistle-blowing law. Therefore, he excluded the Louisiana whistle-blowing law from the arbitration in its entirety. Additionally, the arbitrator excluded Title VII issues from the arbitration, after claimant's timely assertion that she was seeking redress under Title VII. Peculiarly, the arbitrator waited until he thought that the state claims had prescribed before he verbally ruled to exclude, state claims or any other claims related to retaliation. The arbitrator is obviously biased and as such has prejudiced Nabors wrongful termination and retaliation claims.

## **CONCLUSION**

Defense has presented no contract as proof that a contract existed between the parties requiring Nabors to participate in a "binding" arbitration. However, the defense asserts that by Nabors continuing her employment with HSS/HCA she consented to the arbitration clause. This argument fails as HSS/HCA agreement is illusory and is not binding. HSS/HCA own policy states (1) "neither this handbook nor any provision of this handbook is an employment [contract] or any other type of contract'" and (2) "the facility reserves the right to rescind, modify, or deviate from these or other guidelines, policies, practices, or procedures relating to employment matters from time to time as it considers necessary in its sole discretion, either in individual or Facility-wide situations with or without notice". HHS/HCA could not have made it more apparent that they did not intend to make the arbitration clause a contract. They cannot have their cake and eat it too.

Nabors filed suit in state court to preserve her right to those claims since it was apparent that the arbitrator arbitrarily decided not the hear them. Claimant's rights under state law had not

prescribed.  The defense removed Nabors' state civil suit from Lafayette Parish, 16th Judicial District Court, to Louisiana Western District Federal Court.  Nabors requests this Honorable Court to remand this suit back to the 16th Judicial District Court, the court of proper jurisdiction and deny the defense request to dismiss the same.  Finally, Nabors requests that this Honorable Court finds that the HSS/HCA arbitration agreement vague and ambiguous and otherwise unenforceable.

        Respectfully submitted,

        ANGUS LAW FIRM, L.L.C.

        By:  s/Gloria A. Angus
            GLORIA A. ANGUS
            Bar Roll#: 20082
            P.O. Box 2337
            Opelousas, LA  70571
            (337) 948-8800 (office)
            (337) 948-8777 (fax)
            angusg@bellsouth.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of November, 2011, a copy of the above and foregoing pleading was filed electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all parties of interest by operation of the court's electronic filing system.

   s/Gloria A. Angus
    GLORIA A. ANGUS