UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **KRYSTAL NABORS** * | | **CIVIL ACTION NO.: 11-01869** |
| **PLAINTIFF** * | | |
| * | | |
| * | | |
| **VERSUS** * | | |
| * | | |
| * | | **Judge Rebecca F. Doherty** |
| **HCA d/b/a HOUSTON SHARED** * | | |
| **SERVICES, SHELLY LEE** * | | |
| **KATHLEEN O'SULLIVAN, JAMES** * | | |
| **MILLER, and HARRIET PALOMBO** * | | **Magistrate Judge C. Michael Hill** |
| **DEFENDANTS** * | | |

---

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

---

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Krystal Nabors, who opposes the defendant's Motion to Dismiss and Compel Arbitration for the following reasons.

**FACTS**

There is not and was never a written binding arbitration agreement between the parties, notwithstanding the fact the Ms. Nabors requested a binding arbitration.

*BACKGROUND*

From around October 1996, HCA/HSS employed KRYSTAL NABORS, full-time as an Admitting Representative, in Opelousas, Louisiana. From around June 1998, HCA then

Page **1** of **8**

transferred Ms. Nabors as Admitting Representative at the Southwest Hospital in Lafayette, Louisiana.  Then, about February 1999, HCA/HSS promoted Petitioner, to the position of Insurance Verification Clerk and in that same year on or about October 1999, HCA/HSS promoted Petitioner to an Admit Coordinator position.  Thereafter, on or about June 2002, they promoted Petitioner to Patient Access Supervisor.  Two years later on July 2004, HCA/HSS promoted Petitioner to Patient Access Manager.  Ms. Nabors remained in that position until she was terminated on June 28, 2010.

On or after August 2008, Ms. Nabors caused to be reported and reported HCS/SS discriminatory and disparate treatment practices against HCA/SS black female employees through a hotline and to her chain of command.  Petitioner refused to participate in the discriminatory practices of HCA/SS. Prior to Ms. Nabors reporting the acts of discrimination and disparate treatment, HCA/SS regarded Ms. Nabors as a good employee. After reporting the acts of discrimination and disparate treatment to black females, HCA/HSS and employees began to retaliate against Ms. Nabors.

*APPEALS PROCESS*

Ms. Nabors initiated the appeals process upon her termination of employment with HCA/HSS (a Texas company) operating its business in Lafayette, Louisiana.  In accordance with the HCA/HSS Handbook, Ms. Nabors followed the steps as were listed on page 20[1], under the title "Employment Dispute Resolution Process".

The first step allows the employee to discuss problem with supervisor; the second step allows employee to appeal supervisor's decision to department head; the third step allows

---

[1] Exhibit 1 – page 20 of HSS Handbook

Page **2** of **8**

employee to appeal department head's decision to a peer review panel; the fourth step allows employee to appeal the department head's decision to the Senior Vice President. Then, immediately following the four steps, the fourth paragraph under the same title, reads as follows:

> "If your dispute is related to a disciplinary action involving termination of employment and is not resolved in the first four steps, you may request binding arbitration."

> Further, the paragraph after that reads, *in pertinent part*:
>
> "Binding arbitration gives you the chance to [appeal decisions] to a neutral third party. . ."

Next in the handbook, on page 21[2], is the Equal Employment Opportunity/Harassment section. However, that section mentions nothing about filing an EEOC claim outside of the agency. Note that the EEOC reference is not part of HSS Employment Dispute Resolution Process section.

The Senior Vice President, denied Ms. Nabors' appeal; but, the Senior Vice President referred Ms. Nabors to mandatory binding arbitration as part of the dispute resolution process.[3]

Ms. Nabors, unrepresented by counsel, believed that the mandatory binding arbitration was part of the grievance process that she had to exhaust before going to the EEOC. Therefore, she requested mandatory binding arbitration.[4]

## *WHISTLE-BLOWING DISMISSED BY ARBITRATOR*

Though Ms. Nabors requested mandatory binding arbitration to cover the Whistle-blowing activity, the arbitrator dismissed her state Whistle-blowing claim from the arbitration

---

[2] Exhibit 2 – page 21 of HSS Handbook
[3] Exhibit 3 – Senior Vice President Letter re binding arbitration
[4] Exhibit 4 – Nabors' request for mandatory binding arbitration

Page **3** of **8**

even though he admits that he was aware of the state Whistle-blowing claim in his Order[5] dismissing retaliation claims.    In the third Paragraph, four lines down, the arbitrator states, in pertinent part:

> "The April 5 letter does however clearly indicate that Ms. Nabors intends to pursue claims based on alleged race discrimination and alleged retaliation for reporting or opposing the alleged discrimination."

## 15th JUDICIAL DISTRICT COURT LAW SUIT

After HCA/HSS failed to produce a written contract for mandatory binding arbitration between the parties, we filed a suit[6] in the 15th Judicial District Court, in Lafayette, Louisiana on September 21, 2011, to preserve Ms. Nabors' right to sue HCA/HSS.

## LAW

"[A]s a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts. Therefore, generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 166 (5th Cir. 2004); Andry v. New Orleans Saints, 820 so. 2d 602, 603-04 (La. App. 5 Cir. 2002).

*FRAUD*

---

[5] Exhibit 5 – Order – Arbitrator dismissing state claims
[6] Exhibit 6 – Nabors' suit filed in state court

Page **4** of **8**

There are three basic elements to an action for fraud: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to the other party; and (3) the resulting error must relate to a circumstance [*substantially influencing the other party's contractual consent*]. Terrebonne Concrete, LLC v. CEC Enterprises, LLC, App. 1 Cir.2011, 2011-0072 La.App. 1 Cir. 8/17/11, 2011 WL 3610424; Foley & Lardner, L.L.P. v. Aldar Investments, Inc., M.D.La.2007, 491 F.Supp.2d 595.

Fraud need not be a criminal act; two elements necessary to prove fraud are intent to defraud, and actual or potential loss or damages. Williamson v. Haynes Best Western of Alexandria, App. 4 Cir.1997, 688 So.2d 1201, 1995-1725 (La.App. 4 Cir. 1/29/97), rehearing denied, writ denied 695 So.2d 1355, 1997-1145 (La. 6/20/97.

*MISREPRESENTATION*

"Fraud" is misrepresentation or suppression of the truth made with intention either to obtain unjust advantage for one party or to cause loss or inconvenience to the other; fraud may also result from silence or inaction. Ballard's Inc. v. North American Land Development Corp., App. 2 Cir.1996, 677 So.2d 648, 28,437 (La.App. 2 Cir. 6/26/96).

Fraud and deceit need not be founded on misrepresentation, but failure to state facts, where there is duty to disclose them fully, is equally wrongful. Markey v. Hibernia Homestead Ass'n, App.1939, 186 So. 757.

*ARBITRATION*

The right to arbitration arises from private contract, and is enforceable through both the Federal Arbitration Act (FAA) and the Louisiana Arbitration Law (LAL). NCO Portfolio Management Inc. v. Gougisha, App. 5 Cir.2007, 985 So.2d 728, 07-604 (La.App. 5 Cir. 12/27/07), rehearing granted, opinion reversed on rehearing 985 So.2d 731, 07-604, 07-882, 07-884 (La.App. 5 Cir. 4, writ denied 992 So.2d 986, 2008-1146 (La. 9/26/08).

Not all arbitration provisions are valid under state law; rather, application of arbitration law presupposes the existence of a [*written agreement*] not subject to any grounds at law or in equity for its revocation. Abshire v. Belmont Homes, Inc., App. 3 Cir.2005, 896 So.2d 277, 2004-1200 (La.App. 3 Cir. 3/2/05), writ denied 903 So.2d 458, 2005-0862 (La. 6/3/05).

## ANALYSIS

Though Ms. Nabors requested a binding arbitration, HCA/HSS failed to produce a written contract for binding arbitration. No written contract exists between the parties to arbitrate Ms. Nabors' employment disputes as is required by law. Abshire v. Belmont Homes, Inc., App. 3 Cir.2005, 896 So.2d 277, 2004-1200 (La.App. 3 Cir. 3/2/05), writ denied 903 So.2d 458, 2005-0862 (La. 6/3/05).

Even if there were a written agreement, HCA/HSS handbook, particularly pages 20 and 21, misrepresents the dispute resolution appeals process. Its sole intent is to lure Ms. Nabors and other unrepresented claimants to believe that thy must request binding arbitration in order to exhaust the administrative appeals process. HCC/HSS policy clearly directs employees to the binding arbitration. Employment law is complicated for attorneys and the unrepresented aggrieved employee knows very little in the area of employment law.

Not only did the handbook deceived her into requesting mandatory binding arbitration, but also the vice president of the company (refer to Exhibit 3). When Ms. Nabors requested binding arbitration, she lacked the requisite consent required to enter into an agreement.

Ms. Nabors reason for requesting a binding arbitration is because the HCA/HSS handbook misrepresents that the binding arbitration is part of the appeals process. (refer to Exhibit 1). Not only does the handbook misrepresents those facts, it omits important facts about how to file an EEOC claim. HCA/ HSS coerced Ms. Nabors to believe that binding arbitration was the last step in the HSS appeals process. The intent was to prevent Ms. Nabors from filing a suit against HCA/HSS. HCA/HSS is controlling the entire process, including the arbitrator who, for not articulable reason, dismissed Ms. Nabors' claims relative to Whistle-blowing retaliation. This is detrimental to Ms. Nabors' employment disputes.

## CONCLUSION

There was never a written arbitration agreement between the parties. Even if there were a written arbitration agreement, it would be invalid due to fraud and misrepresentation of the HCC/HSS dispute resolution appeals process. Ms. Nabors relied on HCC/HSS misrepresentation of facts regarding the appeals process. To Ms. Nabors' disadvantage, the arbitrator, who is controlled by HCA/HSS has dismissed a good and viable Whistle-blowing claim from the arbitration. Ms. Nabors bases her entire claim on the Whistle-blowing activity. The arbitrator admits that he was aware of her Whistle-blowing claim, but he dismissed it anyway.

For those reasons, Ms. Nabors requests this court to deny enforcement of the arbitration and deny dismissal of Ms. Nabors' suit.  Further, she request that this suit be remanded back to the 15th Judicial District Court.

        Respectfully submitted,

        ANGUS LAW FIRM, L.L.C.


        By:__s/Gloria A. Angus_____
            GLORIA A. ANGUS
            Bar Roll#: 20082
            P.O. Box 2337
            Opelousas, LA  70571
            (337) 948-8800 (office)
            (337) 948-8777 (fax)
            angusg@bellsouth.net


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of January, 2012, a copy of the above and foregoing pleading was filed electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all parties of interest by operation of the court's electronic filing system.

    _s/Gloria A. Angus_____
    GLORIA A. ANGUS